**Nathaniel DIXON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 48239.**

Court of Criminal Appeals of Texas.

March 13, 1974.

John P. Mustachio, Houston, for appellant.

Carol S. Vance, Dist. Atty., Phyllis Bell and Larry Urquart, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., Buddy Stevens, Asst. State's Atty., Austin, for the State.

OPINION

QUENTIN KEITH, Commissioner.

The jury found appellant guilty of robbery by assault and fixed his punishment at six years.

Having studied the record carefully and finding it to be a true resume thereof, we now adopt the statement of the underlying facts as contained in the State's brief prepared by Hon. Phyllis Bell, omitting the record references and quotation marks.

The complainant, Carry Pickering, operated a 7–Eleven Store located in Houston, Harris County, Texas, and identified appellant as one of two men who entered her store on the evening of January 15, 1973, at which time she was robbed, at gunpoint, of cash, cartons of cigarettes and several six packs of beer. She testified that appellant had come into her store two or three times in the week prior to the robbery and asked if he could wait there for a ride to his job. He stood directly in front of the cash register. On the evening of the robbery, a man she subsequently identified as Henry DeWatt came into the store and ordered five cartons of cigarettes and got some beer from the cooler. Mrs. Pickering told him the cigarettes were $5.50 a carton and DeWatt responded, "[T]hat's all right, I have got right here what will pay for it." At that point, DeWatt pulled a gun and ordered her to put the money in a sack. She did so because she was placed in fear of her life or serious bodily injury.

DeWatt then took the sack of merchandise containing the cigarettes, beer and money and indicated an intention to take a girl in the store as hostage but left the store without further action when Mrs. Pickering said that there was a detective in the back of the store with a gun on him. After DeWatt left the store with the merchandise and the money, the complainant ran outside and saw the robber get in a black Cadillac and drive off.

Mrs. Pickering further testified that while DeWatt was in the store and before he pulled the gun appellant came in and bought some cigarettes and, at that point, the complainant asked him what he was doing in the store at that time of the night and appellant replied that he had two jobs, one in the daytime and one at nighttime and he then left the store.

Freddie Quintera, a 13-year old boy, testified that he was in a phone booth outside the 7–Eleven Store at the time of the robbery. He testified that he had seen a black Cadillac parked at the side of the 7–Eleven Store with three people in it. He testified that Henry DeWatt got out of the car first and went into the 7–Eleven Store and that appellant entered the store later. Freddie then entered the store himself and was present when DeWatt pulled a gun and heard him say, "[T]his is going to pay for it." Freddie followed the gunman out of the store and saw the appellant and Henry DeWatt get into the black Cadillac waiting outside. He said the two doors on the passenger side of the Cadillac had been left open, and the motor was running. Freddie testified that when he first observed the black Cadillac he made note of the license number. Because he was in the phone booth at the time he did not have anything to write on and was able to remember only part of the license number and it was RRK. He gave the partial license number to Mrs. Pickering who wrote it on a piece of paper and in turn gave it to the police.

Cindy Lopez, an employee of the 7–Eleven store, was also present at the time of the robbery and identified appellant and Henry DeWatt as being in the store at the time of the robbery. She was the employee that DeWatt attempted to take as a hostage. She identified a gun marked as State's Exhibit No. 4 as similar to the one used in the robbery by DeWatt.

Officer F. G. Black, with the radio patrol division of the Houston Police Department, received a call from the police dispatcher with respect to the robbery and arrived at the 7–Eleven Grocery Store between 7:30 and 8:00 p.m. There he received a description of the suspects and their car and the partial license number "RRK" from the complainant. He immediately cruised the area and spotted the described car with three occupants. Appellant was identified as the person sitting in the rear seat on the passenger side of the black Cadillac stopped by the police, and DeWatt was the one sitting in the front seat on the passenger side. Cash in the amount of $317 was found on DeWatt.

Officer H. B. Davis and his partner, in accordance with a police dispatch, went to the assistance of Officer Black and arrived at the scene of arrest as the officer was bringing appellant out of the back seat of the passenger car, having the other two suspects in custody. Davis searched the vehicle and found a pistol and a sack containing several cartons of cigarettes. The pistol marked State's Exhibit No. 4 was identified by the complainant and the other State witnesses as similar to the one used in the robbery. The cigarettes and other items were also said to be similar to the items taken in the robbery.

To Ms. Bell's statement we add that appellant did not testify on the guilt-innocence stage of the trial, but did so upon the penalty phase thereof. He told of having been in company with DeWatt and one Johnny E. Brown earlier in the day while they were engaged in some heavy beer drinking. But, he denied all knowledge that DeWatt owned or possessed a gun, had any intention of robbing the store, or that a robbery had been perpetrated. Instead, he said that after DeWatt went into the store he discovered that he was almost out of cigarettes, went therein solely to buy, and actually did pay for a package of cigarettes. He said that he then left the store before any robbery took place, resumed his place in the car, and went to sleep. He disavowed all knowledge of a robbery and denied participation therein.

We give no consideration to this belated testimony of appellant in determining the sufficiency of the evidence to sustain the conviction. Art. 37.07, § 3, Vernon's Ann.C.C.P., provides for the receipt of testimony as to the prior criminal record of the accused, his general reputation and his character. It does not permit an accused to remain silent at the hearing upon his guilt or innocence and permit him to testify on the penalty stage as to facts which tend to exonerate or which raise affirmative defenses. See Brazile v. State, 497 S.W.2d 302, 305 (Tex.Cr.App.1973), Morrison, J., concurring. See also, R. Crampton, "Changes in the Punishment Hearing at the Bifurcated Criminal Trial," 37 Tex.Bar Jrl. 153 (Feb., 1974).

The charge, which comes to us without objection, included a charge on the law of principals.

Appellant's first ground of error contends that the evidence is insufficient to sustain the judgment of conviction. While we have not set out all of the State's evidence, we find no merit in the contention advanced. As was said in Price v. State, 410 S.W.2d 778, 780 (Tex.Cr. App.1967):

"Appellant's actions before, during the time, and after his companion committed the robbery were sufficient to support the conclusion that all parties were acting together under a previously formed design to rob. Westfall v. State, Tex. Cr.App., 375 S.W.2d 911. The evidence is sufficient to support the jury's verdict."

Ground one is overruled.

In his other ground of error, appellant contends that the trial court erred in overruling his motion for a mistrial when one of the State's witnesses made reference to the fact that a co-defendant had been convicted of the robbery.

Freddie Quintera had just testified that he had not seen appellant before the occasion in question. The prosecutor then asked if there was anyone else in the black Cadillac. Freddie said, "There was a driver and a person that was convicted on January—." Appellant's counsel: "I object to that, Your Honor." Without formally sustaining the objection, the Court instructed the jury to disregard the answer of the witness. Appellant's motion for mistrial was overruled.

Neither in his objection nor in his motion for mistrial did appellant specify any ground or reason therefor. Such a general objection is not sufficient to preserve the claimed error for review. Breeden v. State, 438 S.W.2d 105, 108 (Tex.Cr.App. 1969); Russell v. State, 468 S.W.2d 373 (Tex.Cr.App.1971); Flowers v. State, 482 S.W.2d 268 (Tex.Cr.App.1972).

Considering the present complaint on its merits, no error is shown. The trial court acted promptly in instructing the jury not to consider the statement and this was all the relief to which appellant was entitled. In another context, this Court held recently in Von Burleson v. State, 505 S.W.2d 553 (Tex.Cr.App.1974):

"If the evidence in question should be condemned as improper and not admissible, the relief the accused was entitled to have was an instruction to the jury to disregard it; and not the more disruptive relief of mistrial which was demanded to the exclusion of any other."

Finding no error, the judgment is affirmed.

Approved by the Court.