**Arthur Bradley GOANS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–83–193 CR.**

Court of Appeals of Texas,
Beaumont.

Feb. 23, 1984.

James A. Morris, Morris & Pennington, Orange, for appellant.

James O. Jenkins, Jr., Asst. County Atty., Orange, for appellee.

OPINION

BROOKSHIRE, Justice.

Appellant pleaded guilty to aggravated robbery on November 24, 1976, in the District Court of Orange County and was assessed punishment at confinement for ten years. This sentence was probated for a period of ten years. In March, 1983, the State filed an amended motion to revoke the probation for failing to report as ordered to the probation officer; for the Appellant's changing of his residence without notification or consent of the probation officer and for failure to pay certain probation fees. On April 6, 1983, the Appellant entered a plea of "true" to the allegations contained in the motion to revoke probation. From our brief, skeletal record, the State, at the time of the motion to revoke probation, took the position that it *would not oppose* an Appellant's motion for shock probation. There is nothing in this skimpy record to indicate whether the trial judge either considered or discussed the possibility of shock probation or indicated either his probable approval or disapproval of same.

No attack or challenge is levelled against any of the proceedings involving the original plea of guilty on November 24, 1976, to the charge of aggravated robbery. In summary, the original charge alleges that on or about March 25, 1976, Arthur Bradley Goans, while in the course of committing theft and with the intent to appropriate property of one Sonny Dale Tootle—the property being United States currency—without the effective consent of Tootle and with the intent to deprive Tootle of said currency, did intentionally and knowingly cause serious bodily injury to Tootle by striking him with a hammer stapler.

On November 24, 1976, the Appellant elected to waive indictment and to plead guilty to the information. From the transcript, we find the Appellant was duly arraigned, admonished and advised of his rights, waived a jury and insisted upon and entered a plea of guilty. Appellant agreed to a stipulation of evidence and waived the ten days period of time to prepare for trial. Evidence was also heard by the Court and Appellant was found guilty as charged in the information. The Appellant waived the ten day period of time for sentencing and the sentence was duly imposed assessing ten years in the Texas Department of Corrections which was immediately probated for a full ten year period. Whereupon, Appellant waived his right of appeal and a correct copy of the terms of probation was actually delivered to the Appellant in open court.

The motion to revoke probated judgment and an amended motion to revoke alleged in detailed facts that the Appellant had failed to report to his probation officer for *thirty months prior to the calendar year of 1981; that he failed to appear at his probation officer's for all of 1981 and all of 1982,* as well as the months of January, February and March, 1983. And, additionally, the Appellant had changed his residence without permission from his probation officer and was behind $400.00 in payment of his probation fee. At the hearing on the amended motion to revoke, the Appellant personally appeared with his court-appointed attorney and, in open court, waived the reading of the motion to revoke probation which was stated in substance. The Appellant entered a plea of true to the allegations. Before accepting the plea of true the Court carefully admonished the Appellant. The Court found he was competent to stand trial; that his plea of true was freely, voluntarily and intelligently made and was made *only because he was guilty of violating the terms of his probation;* that the Appellant completely understood all the written waivers, stipulations and motions filed in connection with the plea of true. The Appellant made a full judicial confession in open court.

The *agreed punishment recommendation,* from the transcript, was that the Appellant would serve ten years in the State Department of Corrections. It is true,

however, that immediately below the recommendation is this notation:

"The State will not oppose defendant's motion for shock probation."

The Appellant executed certain other waivers concerning ten days preparation of trial—he especially approved of his counsel—as well as thirty days to file motion for new trial and motion in arrest of judgment. He waived his right of appeal from the revocation. There is also, in the transcript, a stipulation of evidence taken at the revocation hearing which contains various other waivers such as the confrontation and cross-examination of witnesses and the waiving of his federal and state constitutional right against self-incrimination and after having been sworn, upon oath, the Appellant judicially confessed a myriad of facts, inter alia, that he failed to *appear for 30 probation sessions by the end of 1980; that he failed to appear during the year 1981; that he failed to appear during the year 1982 and the first quarter of 1983;* that he changed his residence without the permission of his probation officer and that he was currently delinquent $400.00 in his probation fees. The stipulation of evidence appears to be regular and correct in every detail. Thereafter, the trial judge assessed the Appellant's punishment at 10 years confinement in the State Department of Corrections. There is nothing in our record to indicate the District Judge, at any time, either approved or acquiesced or disapproved or considered shock probation. Our transcript seems transparently clear that the State simply said *it would not oppose shock probation,* if filed. There is nothing in the transcript to indicate that the State either recommended the same or consented to the same at the time of the revocation hearing. Although the Appellant urges in his brief that he would not have entered his plea had he been aware that he would have had to serve his full sentence, there is no evidence or statement of facts or a record of the proceeding, in question and answer form, covering the hearing on the motion to revoke probation.

■ The Appellant's sole ground of error is that the trial court erred in approving the Appellant's plea of true to the motion to revoke probation for the reason that said plea was not entered voluntarily. The bare bones record before us simply does not substantiate that ground of error. The Appellant does aver that he has discovered, subsequently, that he would not be eligible for shock probation; hence, his plea of "true" is not valid. This averment is brought forward in the argument of the Appellant but no case authority is cited to us to support this contention. Again, in his brief, Appellant argues that he was enticed to enter a plea of true to the State's Motion to Revoke Probation with a clear understanding that he would be eligible for "shock" probation, pursuant to *TEX.CODE CRIM.PROC.ANN. Art. 42.12, Sec. 3e* (Vernon Supp.1982–1983). Then the State candidly recites that it does not now oppose Appellant's contention that he would not have entered the plea of true had he known that he was not eligible for "shock" probation. In the State's response, as we read and construe it, it does not affirmatively and unequivocally state that it agreed to the shock probation or that it recommended shock probation or that it consented or acquiesced to shock probation at any time. Nor does the State unequivocally concede that the Appellant did not know that he was ineligible for shock probation; nor does the State advance the idea that the District Judge either approved or disapproved or expressed any intention concerning shock probation. Nor does the State advance that the initial period of the shock probation was properly and satisfactorily served by the Appellant. Under our sparse record, we find no present basis for reversing the trial court's order revoking probation because of *TEX.CODE CRIM.PROC. ANN., Art. 42.12, Sec. 3e* (Vernon Supp. 1981–1983), providing in part:

"Sec. 3e. (a) For the purposes of this section, the jurisdiction of a court in which a sentence requiring confinement in the Texas Department of Corrections

is imposed for conviction (of a felony) shall continue for 180 days from the date the execution of the sentence actually begins. After the expiration of 60 days but prior to the expiration of 180 days from the date the execution of the sentence actually begins, the judge of the court that imposed such sentence may on his own motion or on written motion of the defendant, suspend further execution of the sentence imposed and place the defendant on probation under the terms and conditions of this article, *if in the opinion of the judge the defendant would not benefit from further incarceration in a penitentiary.* Probation may be granted under this section only if:

  . . . .

  "(3) the offense for which the defendant was convicted was other than those defined by Section ... 29.03 ... Penal Code." (emphasis added)

*TEX.PENAL CODE ANN. Sec. 29.03* (Vernon 1974) defines and delineates aggravated robbery. *See also TEX.CODE CRIM. PROC.ANN. Art. 42.12, Sec. 3f(a)(1)(E) (Vernon 1979).*

Nor could there have been any misunderstanding or mistake of law concerning the availability or even the consideration of "shock probation" under *TEX.CODE CRIM.PROC.ANN. Art. 42.12, Sec. 3e(a)* (Vernon Supp.1982–1983). *Art. 42.12, Sec. 3e* apparently became effective September 1, 1981, according to the cumulative pocket parts (Vernon Supp.1982–1983). However, the basic, long-standing concept of shock probation has been unavailable and disallowed since the original *Art. 42.12, Sec. 3e(a), (b)* and *Art. 42.12, Sec. 3f(a)(1)(E)* (Vernon 1979), when concerned with aggravated robbery, which disallowed shock probation in an aggravated robbery case beginning in 1965 or, by the latest, August 28, 1967. Hence, at *all times material and relevant to our case at bar*, any type of shock probation, whether it was a minimum of 60 days to 120 days, under the old

law; or a maximum of 180 days under the new law, was simply not legally possible and absolutely contrary to the legislative statutory enactments.

■ But, perhaps more importantly, under either the 1965 law or under the September 1, 1981, amendment; it is manifest and mandatory that the opinion and decision of the trial judge are paramount and supreme as to whether or not any "shock probation" shall be granted. Surprisingly and almost shockingly, under *Art. 42.12, Sec. 3e(c)* (Vernon Supp.1982–1983)—being the amendment effective September 1, 1981 —the court may *deny the motion for shock probation without a hearing,* but this subsection continues with the following mandate:

  "[B]ut [the court] may *not* grant the motion [shock probation] without holding a hearing and providing the attorney for the state and the defendant the opportunity to present evidence on the motion." (emphasis added)

We construe this section to mean that the approval of the trial judge is vital and, in our record, there is no hint or indication of any type of approval by the trial judge. Indeed, it appears that the trial judge was not consulted about this matter.

The transcript reveals that the Appellant took the position that he was totally satisfied with the representation given to him by his Court-appointed attorney and that his attorney was completely competent in every aspect of his representation of the Appellant; the transcript shows the Defendant was admonished by the Court of the consequences of his plea, including the minimum and maximum punishment; and, yet, the Appellant, persisted in pleading "True". Thereafter, the Court recited that it plainly appeared to the Court that the Appellant was sane and was not influenced in making the said plea of "True" by consideration of fear or by persuasion or delusive hope of pardon. The order revoking probation was dated and signed April 7th,

1983. The notice of appeal in the case was not filed until August 19, 1983, approximately 4 months and 12 days later. There is an approval of the record in the transcript affirmatively setting out that there was no Statement of Facts filed and that none was requested. We have not been favored with any oral arguments or verbal submissions in the case and, according to our understanding, the same were waived by Appellant and the State. Again, the only ground of error is that the plea was not voluntary. Again, the record before us shows that it was voluntary.

Moreover, we think the argument under the sole ground of error is not applicable to the ground of error; it is not germane and is not relevant to the ground of error. There are no cases cited to us in either the brief of the Appellant or the State. *See TEX.CODE CRIM.PROC.ANN. Art. 49.09, Sec. 9* (Vernon Supp. 1982–1983). *See also Phillips v. State*, 511 S.W.2d 22 (Tex.Cr. App.1974). From *Phillips v. State, supra,* we quote, at pages 26, and 31:

"Each of the members of this Court has had occasion in recent years to follow the general rule of long standing: A ground of error making no definite reference to the record, and which is unsupported by argument and authorities, is not entitled to consideration under Art. 40.09, Sec. 9, V.A.C.C.P. Such a ground of error, under the universal holdings of this Court, presents nothing for review. A few of the authorities so holding are cited in the footnote following the names of the authors.[2] There has been no departure from this rule by any of the Commissioners and we forego a detailed analysis of their opinions following the well-trodden path of the members of the Court.[3]

. . . .

"Appellant's 52nd ground of error, presented without any statement of facts, argument, or supporting authority, is a conclusory allegation that he is entitled to a new trial because he was arraigned after the jury had been selected and impanelled. Nothing is presented for our review because of a lack of compliance with the requirements of Art. 40.09, Sec. 9, V.A.C.C.P. *Frazier v. State,* fn. 2 supra; *Hall v. State,* 492 S.W.2d 512, 514 (Tex.Cr.App.1973); *Mason v. State,* 495 S.W.2d 248, 250 (Tex. Cr.App.1973).

. . . .

"The remaining grounds of error, and specifically Nos. 35–68, present nothing for review. The grounds of error simply refer us to the record with an argument in some instances, but in none of these grounds is a single authority, statutory or decisional, cited in support of the alleged error. Not having been presented in accordance with the rules governing briefs in this Court, no error is presented. See cases cited in fn. 2, supra."

"[2] Presiding Judge *Onion: Hayes v. State,* 484 S.W.2d 922, 924 (Tex.Cr.App.1972); Judge *Morrison: Mosley v. State,* 494 S.W.2d 557, 558 (Tex.Cr.App.1973); Judge *Douglas: Cortez v. State,* 487 S.W.2d 138, 139 (Tex.Cr.App.1972); Judge *Roberts: Daniel v. State* 486 S.W.2d 944, 948 (Tex.Cr.App.1972); Judge *Odom: Frazier v. State,* 480 S.W.2d 375, 381 (Tex.Cr.App.1972).

"[3] Many other authorities are cited in West, Texas Digest, Criminal Law, key number 1130(5), to which we refer.

In view of the transcript before us and in view of the fact that there is no other record or evidentiary statement, we have reviewed the matter carefully for fundamental error. We find no fundamental error.

AFFIRMED.