**TRADERS AND GENERAL INSURANCE COMPANY, Appellant,**

**v.**

**John L. WHITE, Appellee.**

No. 6831.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 19, 1959.

Rehearing Denied Feb. 16, 1959.

Simpson, Clayton & Fullingim, Amarillo, Chas. H. Dean, Plainview, for appellant.

Huff & Splawn, Lubbock, for appellee.

CHAPMAN, Justice.

This is a Workman's Compensation case tried to a jury upon pleadings which included allegations for total and permanent disability alleged to have been caused when appellee, while working as a cotton tier at a compress "kicked" a bale

of cotton, in line with his duty, and allegedly injured his low back. According to his testimony he was standing on his left foot, holding to an iron bar with his hands and "kicked" the bale with his right foot so other workmen could straighten the bags and "kick" it back to the tiers. Upon proper issues submitted and admissions made the jury answered the questions in such manner that the trial court rendered judgment for the claimant, John L. White against appellant, Traders & General Insurance Company for the sum of $25 per week for 401 weeks and that said sum be paid in a lump sum, after allowing appellant the usual statutory 4% discount. Appellant, through the answer upon which it went to trial had admitted that if the claimant recovered total and permanent disability he was entitled to a lump sum settlement, thus removing from the consideration of the jury the question of appellee's "manifest hardship and injustice" requiring a lump sum payment.

■■ Our Supreme Court has held that where it was stipulated that any award should be paid in lump sum it was error to permit the claimant even to read in the presence of the jury portions of his pleadings having to do with his personal financial status, bearing on his right to a lump sum. Texas Employers' Ins. Ass'n v. Lee, 152 Tex. 227, 256 S.W.2d 569. Additionally, this court in Traders and General Insurance Company v. L. A. Rockey, Tex. Civ.App., 278 S.W.2d 490, 492, has held, "When essential elements of an alleged cause of action are specifically admitted by an adversary in open court, they need no evidence to substantiate them and such elements need not be submitted to a jury in such event." Such being the rules we believe questions to witnesses that emphasized appellee's impoverished condition and references in his argument to his poverty and the needy condition of his children would be clearly improper, especially where such references were placed before the jury in tendered testimony, repeated in his argument, and appellee's poverty contrasted with the insurance company's wealth, such as in this case.

Appellant is before us upon 28 points of error upon a record properly supported by timely objections, exceptions, motions and requests. More than half of the points go to objections made to the argument of appellee's counsel, to part of which the jury was instructed not to consider and to part of which argument the court failed to sustain appellant's objections.

Three doctors testified in the case for appellant. Dr. Elmer Hawkins of Hamlin and Dr. McKinley Howell of Plainview, in person, and Dr. Ralph Donnell of Abilene by deposition. Dr. Jack Estes of Abilene testified for appellee. In his argument to the jury counsel for appellee, in speaking of the cross-examination of Dr. Estes by appellant's counsel said, "Dr. Jack Estes has been crucified on the cross on the fact that he had the nerve and intestinal fortitude to face an insurance company." To this argument an objection was sustained.

Mr. Bowers arguing further for appellee said, "This insurance company can call in five doctors to our one: and I think you can see that from the witness stand. It's a bad situation, but that's what the situation is." The court then said, after objections were made to the argument, "The jury will not consider that."

Appellee's counsel arguing then in reference to Dr. Hawkins' testimony, after commenting on the fact that the doctor had treated appellee 31 times, charged him $168, had written the insurance company that claimant had some injury, the amount of disability not then established, and then testified at the trial he did not have any disability said:

"I know some people who needed that one hundred and sixty-eight dollars a lot worse than Doctor Hawkins did, I know, who could have used that three dollars to buy some shoes and clothes with, are sitting right over there in Hamlin County, or Hamlin, Texas,

right now. If he wants to take money from somebody that is wealthy and rich who is going to pay it to a doctor, regardless of whether there is anything wrong with them or not, let him take their money; but don't let him take the food away from six little colored babies over there in Hamlin County, and then come in here and laugh about it, * * *."

To said argument the following transpired:

"Mr. Simpson: We take a bill of exception to that whole line of argument about taking money away from six little colored children, and previous reference to that they can take it from rich people but to leave it for the poor, * * *

"The Court: Yes, you may have your exception.

"Mr. Simpson: And it is an appeal to prejudice, your Honor.

"The Court: All right."

From this record it is clear that the court was saying to counsel for appellant that he could have his bill of exception to the argument, and that he permitted it to go to the jury unhampered by any caution not to consider it. The record as a whole bears out said fact.

■ The trial court should have sustained the objections and immediately instructed the jury not to consider such argument. By saying in the presence of the jury that counsel could have his bill of exceptions to the argument and in failing to sustain the objections and instructing the jury not to consider the argument the trial judge was in effect placing his sanction upon such argument. Airline Motor Coaches, Inc. v. Bennett, 144 Tex. 36, 187 S.W.2d 982.

During the testimony appellee's counsel had injected into the case appellee's impoverished financial condition by having him testify he quit going to the doctor because "I wasn't able, I didn't have the money * * *" and by asking the question, "Now, John, you got six kids, I believe you told us over there, how many of those are down sick in bed right now?"

It is true the testimony that he was not financially able to go to the doctor any more was probably invited and the objection to the question as to how many of his six children were sick in bed was sustained, still, those matters had been placed before the jury by counsel for appellee and were such as to make the arguments above quoted of a more harmful nature because of that background.

■ The question then presents itself as to whether such a record requires reversal. Before the Supreme Court adopted Rules 434 and 503 of the Texas Rules of Civil Procedure in 1941 the rule of "Presumed Prejudice" would have made reversal clearly mandatory under the record before us. Since the adoption of the two rules just mentioned, Judge Calvert of our Supreme Court, in writing for the Texas Law Review, has said, "The Supreme Court of Texas has not sought in any of its opinions to work out a formula by which it will be guided in all cases. Rather, the court seems to have recognized that the issue of prejudicial or harmless error is an issue entrusted to the sound discretion and good sense of the appellate courts, and it has said that it will determine the issue in each case from a study of the record as a whole." Vol. 31, No. 1, Texas Law Review, paragraph 1, p. 17. This statement by Judge Calvert is supported by the Supreme Court in Southwestern Greyhound Lines, Inc. v. Dickson, 149 Tex. 599, 236 S.W.2d 115, 120, where the court said such question "is to be determined as a matter of our judgment in the light of the record as a whole."

As heretofore stated this case is one based on an alleged low back injury. It was hotly contested from the very first testimony offered and the issues were very

sharply drawn as to injury. Dr. Ralph Donnell, a specialist in orthopedic surgery, a Diplomate of the American Board of Orthopedic Surgeons and a Fellow of the American Academy of Orthopedic Surgeons, Dr. McKinley Howell, a general practitioner in Plainview for twenty-eight years, and Dr. Elmer Hawkins of Hamlin testified in effect that appellee had no disability. The former two testified to making tests such as the "straight leg raising test" and tests to determine muscle spasm. They testified muscle spasm cannot be faked, that appellee showed no muscle spasm and that from their various tests and from their x-ray pictures they could find no indication or evidence of traumatic or accidental injury to the spine or any other part of the body of the claimant. Dr. Donnell testified to making two thorough and extended examinations and Dr. Howell testified to seven examinations from November 21 through December 11, 1956.

Dr. Jack Estes, a general practitioner of twenty-seven years experience testified to making various tests. He had claimant take bending exercises, tested his reflexes, and checked him for muscle spasm. He examined him only one time, not for treatment, but for knowledge of his condition for the purpose of testifying in the trial of the case. In answer to a hypothetical question covering testimony that had been offered with respect to his alleged injury and his subsequent physical actions Dr. Estes testified that in his opinion appellee was totally disabled in relation to doing manual labor and that said condition was caused by the claimed injury.

■ With a judgment for total and permanent disability on issues so clearly drawn, if tendered improper testimony in the presence of the jury and inflammatory argument giving emphasis to the obvious difference in the economic standing between the parties could ever be such as to require an appellate court to say, in looking at the record as a whole, that such questions and argument probably influenced the verdict unfavorably to appellant, this seems to us to be such a case. Though we deem it unnecessary to quote further statements, questions and argument made outside the record and of an improper nature, when the record is studied as a whole one cannot fail to see the continual thread of economic disparity between the parties woven into the fabric of the case, always over objection of appellant, and the harmful effect is enhanced when we consider that the trial court in effect put his approval upon at least part of the record giving emphasis to such disparity. Additionally, the entire portion of the argument, including that to which objections were sustained and argument and statements made of a "borderline" nature, which, though not themselves completely improper from the record before us, may yet be taken to enhance the effect of the questions asked and argument made which are definitely improper. Considering these matters, and the closeness of the various fact issues, our studied judgment is that appellant probably suffered prejudice. Our conclusions are, at least in part, based upon the reasoning by the Supreme Court in Southwestern Greyhound Lines, Inc. v. Dickson, supra.

Many other points of error were raised, some of a serious nature and some not so serious. If this case, upon another trial, is tried upon the merits of whether appellee was or was not injured as claimed, and if he was, to what extent, there should be no occasion for any of the serious questions that are in this case to arise again. Therefore, we see no point in writing further on other questions raised concerning argument and other alleged errors.

Judgment of the trial court is reversed and remanded for another trial.